**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Criminal No. TDC-14-437** |
| | ) | |
| **EVAN ANTHONY PEEK-AUSTIN,** | ) | |
| | ) | |
| **Defendant** | ) | |

**MEMORANDUM IN AID OF RESENTENCING**

The government submits this memorandum in advance of the defendant's resentencing, currently scheduled for January 28, 2020 at 10:00 a.m. For the reasons that follow, consistent with his original sentence, the government respectfully submits that the Court should sentence the defendant to a term of imprisonment of 132 months, followed by a 3 year term of supervised release.

**I.    BACKGROUND**

    **A.    The Defendant's Count of Conviction**

On April 11, 2014, the defendant, Evan Anthony Peek-Austin ("the defendant" or "Austin"), and two co-defendants, Shawn Delonte Allen ("Allen") and Joel Varela Linares ("Linares"), forcibly entered the residence of Victim A at a time when Victim A was not home. Prior to the robbery, the defendant, Allen and Linares surveilled Victim A's home and planned the robbery. On the day of the robbery, the defendant brought the materials necessary to effect the robbery, including zip ties, masks, and a firearm. As Victim A was returning to the residence, Allen approached Victim A from behind (while brandishing a handgun) and forced Victim A into the residence. Once Victim A was inside the residence and in Victim A's kitchen, the defendant was responsible for retraining Victim A by securing Victim A's hands with plastic zip ties. The defendant, Allen, and Linares then questioned Victim A about the location of drugs and drug proceeds. At that time, Allen, Linares, and

Austin believed that Victim A was in possession of heroin imported from Guatemala or proceeds from heroin sales. Austin, Allen, and Linares were each in possession of a handgun, and threatened to kill Victim A if Victim A did not produce the "drugs and money." Furthermore, while questioning Victim A, the defendant brandished his handgun. When Victim A claimed that he did not have drugs or drug proceeds, Linares placed a knife to the victim's neck, and Allen struck Victim A in the head with a handgun. While Victim A was still in the kitchen, Allen heated a metal spoon using an oven range and placed the hot spoon on Victim A's wrists.

The defendant and his co-conspirators thereafter transported Victim A to Victim A's basement. While there, the defendant again restrained Victim A by securing Victim A's feet with plastic zip ties. Austin, Allen and Linares again heated a metal spoon using an oven range and placed the hot spoon on Victim A's face. The three defendants continued to demand that Victim A tell them the location of "drugs and money." After sustaining burns on his face and hands, Victim A told Allen, Linares, and Austin that his American friend had the drugs and money. Allen, Linares, and Austin allowed Victim A to contact this friend, who was, in fact, a special agent with Homeland Security Investigations ("HSI"). The defendants were unaware that Victim A was communicating with a law enforcement officer. Victim A arranged to meet with the HSI agent, using the ruse that the HSI agent would have drugs and money. Victim A informed the defendant and his co-conspirators that his friend would have approximately ten kilograms of heroin.

Allen and Linares instructed Victim A to drive the three of them to the meeting location, a CVS Pharmacy ("CVS") off Baltimore Avenue (Route 1) in Beltsville, Maryland. Linares informed Victim A that Austin would remain at Victim A's house to wait for Victim A's family, and that Austin would harm Victim A's family if Victim A did not comply with the instructions provided by

Allen, Austin, and Linares.

While driving to the CVS, Allen and Linares brandished their handguns and pointed the firearms at Victim A to ensure that Victim A complied with their instructions. At some point, Austin also arrived at the CVS. Once the HSI agent arrived, Victim A met the HSI agent and told the HSI agent that Austin and his co-conspirators were going to kill Victim A. Victim A and the HSI agent quickly exited the CVS parking lot. As the HSI agent and Victim A were leaving the parking lot, Allen exited the vehicle and again brandished a firearm. Linares then entered a Nissan Sentra and pursued the HSI agent and Victim A along Route 1 in Beltsville, Maryland. The pursuit ended when Prince George's County police officers stopped Linares's vehicle and detained Linares.

Meanwhile, Austin and Allen entered a Honda Prelude and fled the CVS parking lot. Law enforcement pursued Allen and Austin, who eventually fled on foot. After fleeing from the Honda Prelude, Austin (and Austin alone committed a carjacking). Specifically, Austin approached a vehicle occupied by two individuals, brandished a firearm and demanded that the individuals exit their vehicle. The victims complied and Austin drove away with the vehicle but shortly thereafter encountered a gate. Austin then abandoned the stolen vehicle and fled again on vote. Austin was later apprehended.

Law enforcement searched the Honda Prelude, which was registered to Austin. Within the vehicle, law enforcement found $5,000 in U.S. currency, a black ski mask, a black hat, a black Beretta pellet gun, a black single strap backpack containing zip ties and white gloves, and a black Gucci wallet containing Austin's identification documents.

**B.     The Defendant's Guilty Pleas**

On March 19, 2015, the defendant pled guilty to Count One, Count Two, and Count Three of

3

the Indictment pending against him, which charged him with Conspiracy to Interfere with Commerce by Robbery, in violation of 18 U.S.C. § 1951(a) (Count One), Using, Carrying and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c) (Count Two), and Carjacking, in violation of 18 U.S.C. § 2119 (Count Three).

### C.     The Defendant's 2015 Sentencing

The defendant was initially sentenced on July 8, 2015. *See* Exhibit ("Ex.") 1 (Sentencing Transcript). At sentencing, the Court concluded that the sentencing guidelines range was 70 to 87 months as to Count One and Count Three, followed by seven years as to Count Two, for a total guidelines range of 154 months to 171 months imprisonment. Ex. 1 at 6, 33. As to Count One and Count Three (which grouped pursuant to the Guidelines), the range was based on an adjusted offense level of 27 and a criminal history category I.[1] Ex. 1 at 6. Ultimately, the Court sentenced the defendant to a below-guidelines sentence of **132 months** (640 months as to Count One and Count Three followed by 84 months as to Count Two).

In determining the appropriate variant sentence, the Court calculated the guidelines *absent* the 18 U.S.C. § 924(c) charge. Notably, this is the same guidelines range that the defendant faces upon resentencing. Specifically, the Court found:

> Now, in deciding on an appropriate sentence, I know that the guideline range is driven by the seven-year mandatory minimum sentence, consecutive sentence from the 924(c) charge, and I note that had this charge not be included, the use of a firearm would still have been factored into a guideline range because there would have been a six-level enhancement for the firearm under the robbery guideline.
>
> If treated as a robbery and carjacking involving the use of a firearm, the exact same conduct,

---

[1] The defendant and the government disputed whether a 2-level enhancement or a 4-level enhancement applied, pursuant to U.S.S.G. § 2B3.1(b)(3)(A) (related to bodily injury). The Court ultimately concluded that a 2-level enhancement was applicable. Ex. 1 at 4-5.

4

>but without the 924(c) charge, the offense level would have been 34. With the acceptance of responsibility, it would have been 31, and the guideline range would have been 108 to 135 months. I note this calculation because a similarly-situated defendant would be sentenced in that range but for the decision to add the 924(c) charge, which, for someone with no history of drug crimes or violent crimes, is of questionable necessity.

Ex. 1 at 38-39. The Court then sentenced the defendant to a total sentence of 132 months. *Id.* at 39. In order to get to this total sentence, given the seven year consecutive mandatory minimum on Count Two, the Court varied down as to Count One and Count Three to 48 months. In doing so, the Court again reiterated "the need to avoid unfair sentencing disparity with similarly-situated defendants, particularly defendants with limited criminal history who engage in this exact same conduct but with different charges." *Id.* at 39 ("The sentence is, nevertheless, at the high end of the range of the similarly-situated defendant with the same conduct would face because of the seriousness of this offense, including the carjacking and the threat to a federal law enforcement agent.")

### D. Subsequent Judicial Decision and 2255 Litigation

On June 24, 2019, the Supreme Court decided *United States v. Davis*, 5, which held that the definition of "crime of violence" in 18 U.S.C. § 924(c) was unconstitutionally vague. In light of that ruling, and the Fourth Circuit's prior ruling in *United States v. Simms*, 914 F.3d 229, 233 (2019) (en banc), the government conceded in response to the defendant's petition filed pursuant to 28 U.S.C. § 2255 that Hobbs Act Conspiracy was not a "crime of violence" under the force clause of 18 U.S.C. § 924(c). ECF 144. By an order dated December 16, 2019, this Court vacated the defendant's conviction for Count Two. ECF 175. The defendant now stands before the Court facing resentencing on Count One and Count Three.

### E. Revised Presentence Investigation Report

On January 14, 2020, the U.S. Probation Office issued a revised Presentence Investigation

Report ("PSR"). ECF 181. The Revised PSR resulted in a Total Offense Level of 31. *Id.* ¶ 45. With a Criminal History Category I, *id.* ¶ 53, the defendant's advisory guidelines range is 108 months to 135 months. *Id.* ¶ 81.

## II.     LEGAL STANDARD

In *United States v. Booker*, the Supreme Court held that the guidelines are advisory and not mandatory, and the Court made clear that district courts are still "require[d] . . . to consider Guidelines ranges" in determining sentences, but also may tailor the sentence in light of other statutory concerns. 543 U.S. 220, 245 (2005); *see* 18 U.S.C. § 3553(a). In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court elucidated the proper procedure and order of consideration for sentencing courts to follow: "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Id.* at 49 (citation omitted). Next, a sentencing court should "consider all of the §3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [the sentencing court] may not presume that the Guidelines range is reasonable. [The sentencing court] must make an individualized assessment based on the facts presented." *Id.* at 49-50 (citation and footnote omitted). That process also applies to a plenary resentencing proceeding: "This sentencing framework applies both at a defendant's initial sentencing and at any subsequent resentencing after a sentence has been set aside on appeal." *Pepper v. United States*, 562 U.S. 476, 490 (2011).

## III.    ARGUMENT

A sentence toward the high end of the advisory guidelines range—namely 132 months—will adequately reflect the history and characteristics of the defendant, the seriousness of the offense, the

need to avoid unwarranted sentencing disparities, and the need to protect the public. Indeed, such a sentence is the same sentence the Court previously determined was sufficient but not greater than necessary to achieve the purposes of sentencing pursuant to 18 U.S.C. § 3553(e). Importantly, this sentence was imposed **after the Court calculated the guidelines that would have applied if the defendant had not been convicted of 18 U.S.C. § 924(c), came to the exact same guidelines that are now applicable for re-sentencing, inferred that those were the more applicable guidelines given the defendant's criminal history category, and sentenced the defendant toward the high end of that guidelines range.** There is no reason to disturb this Court's original sentence.

    A.    The Violent Nature of the Defendant's Criminal Conduct Warrants a Sentence at the High End of the Advisory Guidelines Range.

Without question, armed robbery is a serious offense. But, here, as this Court recognized, the defendant committed "a particularly heinous crime, and if not for the fact the victim was able to contact a law enforcement agent, the consequences could have been very grave." Ex. 1 at 34. Even more importantly, the defendant himself was responsible for many of the heinous acts, and was also the sole defendant involved in the victimization of two additional victims—the carjacking victims— while eluding capture. Specifically, Austin was the individual who brought the zip ties, gloves, and masks to the robbery for the purpose of restraining the victim. Austin then was the defendant who restrained the victim with zip ties on two separate occasions—once in the kitchen and then again in the basement—so that the defendants could torture the victim with hot spoons in order to determine where the victim allegedly kept drugs and money. Austin also brought and brandishing a firearm to threaten Victim A. But, Austin then fled law enforcement, brandished his firearm again, and carjacked two additional victims in his attempt to flee from law enforcement. Notably, only Austin

was involved in—and therefore convicted of—the carjacking offense.

The defendant's decision to participate in this armed robbery—the object of which was drugs and drug money—demonstrates that he has little concern for the consequences of his actions. The defendant and his co-conspirators threatened a civilian victim with physical injury amounting to torture, using a variety of weapons—a heated spoon, a knife, and firearms – all while the victim was restrained. The trauma felt by three different victims—Victim A and the two carjacking victims—from having a firearm brandished at them, is only heightened when the defendants physically assaulted the victim (in the case of Victim A) and stole the vehicle they were driving, leaving them alone on the side of the road (in the case of the carjacking victims). A sentence at the high end of the the advisory Guidelines range would promote respect for the law, by sending the message that armed robbers, particularly those who restrain, torture, and strike the victim, and then elect to victimize two additional victims in their attempt to evade capture by law enforcement, will be dealt with severely.

B.  The Need to Avoid Unwarranted Sentencing Disparities And Promote Respect for the Law

The government respectfully submits that this Court has already sentenced the defendant as if he were not convicted of 18 U.S.C. § 924(c). There is simply no basis to disturb this original determination that 132 months was appropriate even if the defendant had not been convicted of 18 U.S.C. § 924(c). Indeed, at the defendant's original sentencing, this Court recognized that the applicable guidelines range if the defendant had not been convicted of 18 U.S.C. § 924(c) was 108 to 132 months imprisonment. Ex. 1 at 38-39. The Court "note[d] this calculation because a similarly-situated defendant would be sentenced in that range but for the decision to add the 924(c) charge, which, for someone with no history of drug crimes or violent crimes, is of questionable necessity."

*Id.* at 39. The Court then sentenced the defendant to 132 months, recognizing "the need to avoid unfair sentencing disparity with similarly-situated defendants, particularly defendants with limited criminal history who engage in this exact same conduct but with different charges" and that "[t]he sentence is, nevertheless, at the high end of the range of the similarly-situated defendant with the same conduct would face because of the seriousness of this offense, including the carjacking and the threat to a federal law enforcement agent." *Id.*

Moreover, the defendant was previously charged with Hobbs Act Robbery and Carjacking, both of which still serve as a valid 924(c) predicate. Although hindsight is 20/20, if the government had known Hobbs Act Conspiracy would become invalidated, the government could have (and would have) insisted that the defendant plead guilty to the substantive Hobbs Act Robbery or Carjacking count, which charged him with the armed robbery and carjacking that he admitted in the statement of facts. The government dismissed that charge as part of the negotiated plea agreement and it clearly does not promote respect for the law to allow the defendant the benefit of the dismissal for a change in the law unseen by either party at the time. Indeed, to sentence the defendant without recognition of the fact that defendants involved in the same exact conduct, but who were not fortunate enough to plead to a conspiracy rather than a substantive Hobbs Act Robbery, would create rather than avoid unwarranted sentencing disparities.

As such, under either scenario—with or without a § 924(c) conviction—the Court's original sentence of 132 months prevents unwarranted sentencing disparities and promotes respect for the law.[2]

---

[2] The defendant's co-defendant, Shawn Delonte Allen, was recently re-sentenced by this Court and sentenced to 136 months imprisonment. Allen was originally sentenced to 150 months.

C.      The Defendant's History and Characteristics, and the Need to Protect the Public

A high-end guidelines sentence, in addition to accounting for the nature and circumstances of the offense, will also serve the goal of protecting the public. In imposing sentence, the government asks the Court to consider the violent nature of the defendant's crimes in this case, coupled with the defendant's previous criminal convictions. *See* PSR ¶¶ 49-51 (1996 Handgun on Person; 2003 Operating While Impaired; 2004 Theft: Less $500 Value). The government believes that the only way to protect the public from further crimes of violence by this defendant is to impose a sentence at the high end of the advisory guidelines range.

## IV.    CONCLUSION

The defendant faces resentencing for an unusually violent and heinous armed robbery conviction. For the foregoing reasons, and based on a balancing of the applicable factors set out in 18 U.S.C. § 3553(a), including the seriousness of the offense, promoting respect for the law and protection of the public from further crimes of this defendant, the government requests that this Court resentence the defendant to the original term of 150 months imprisonment, followed by 3 years supervised release.

Respectfully submitted,

ROBERT K. HUR
UNITED STATES ATTORNEY

By:  /s/ Kelly O. Hayes
     Kelly O. Hayes
     Assistant United States Attorney

---

Unlike Austin, however, the Court did not consider Allen's original sentence in the context of non-§ 924(c) guidelines.  In contrast, this Court has already sentenced Austin to 132 months, as if he had not been convicted of 18 U.S.C. § 924.

**CERTIFICATE OF SERVICE**

I hereby certify that on January 14, 2020, a copy of the foregoing Memorandum in Aid of Resentencing was sent by Electronic Case Filing and electronic mail to all counsel of record.

                                                    /s/
                                    Kelly O. Hayes
                                    Assistant United States Attorney